**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| TYJON BOLTON | : | Civil Action No. 3:24-cv-42 |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| EAST HARTFORD HOUSING | : | |
| AUTHORITY | : | |
| | : | |
| Defendant | : | January 12, 2024 |

**COMPLAINT**

Plaintiff Tyjon Bolton is a person with a disability who, due to the callous and willful discriminatory actions of Defendant East Hartford Housing Authority, is stranded in a substandard apartment at great risk to his health and against the advice of his medical providers. Since 2022, Defendant has engaged in a pattern of discrimination and retaliation against Plaintiff including baselessly withdrawing its approval for him to have a live-in aide to assist him with his disability-related needs, terminating his federal housing subsidy without due process, and refusing to transfer him to a newly constructed unit either by right or as a reasonable accommodation of his disability. Plaintiff brings this civil rights action for declaratory, injunctive, and monetary relief due to Defendant's violations of the federal Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, its Connecticut equivalent, Conn. Gen. Stat. §§ 46a-64c *et seq.*, Section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983.

**I.      JURISDICTION AND VENUE**

1.      This Court has subject matter jurisdiction over the federal claims asserted in this action under 28 U.S.C. § 1331 because the action arises under the laws of the

1

United States, including 42 U.S.C. §§ 3601 *et seq*. This Court also has supplemental

jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those

claims are so related to the claims over which this Court has original jurisdiction that

they form part of the same case or controversy under Article III of the United States

Constitution. This Court is authorized to issue a declaratory judgment pursuant to 28

U.S.C. §§ 2201-02.

2.     Venue is proper under 28 U.S.C. § 1391(b) because the incidents giving

rise to this action occurred within this judicial district.

## II.     PARTIES

3.     Plaintiff Tyjon Bolton is a natural person who resides in East Hartford,

Connecticut.

4.     Mr. Bolton resides with his adult sister and his mother, who serves as his

live-in aide.

5.     Mr. Bolton resides in a low-income federally subsidized property known as

Veterans Terrace.

6.     Until Defendant improperly terminated his voucher in April 2023, Mr.

Bolton paid 30 percent of his household income in rent.

7.     At all times relevant, his unit was owned and operated by Defendant East

Hartford Housing Authority, which receives HUD multi-family housing funding under a

program called "Project-Based Section 8".

8.     Defendant is a Public Housing Agency which receives federal funding

from the U.S. Department of Housing and Urban Development. At all times relevant to

this complaint, Defendant was the landlord and property manager for Plaintiff's unit, and administered the subsidy attached to Plaintiff's unit.

9.      Defendant is governed by a five-member Board of Commissioners.

10.     Defendant's Executive Director is Debra Bouchard.

11.     Defendant's Director of Compliance is Urleen "Lynn" Naughton. Upon information and belief, in her role as Director of Compliance, Ms. Naughton is directly responsible for overseeing Defendant's subsidy termination process, has final decision-making authority concerning individual subsidy terminations, and is responsible for processing reasonable accommodation requests made to Defendant in accordance with federal and state laws and regulations.

### III.     LEGAL FRAMEWORK

12.     The Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601 *et seq.* ("FHA") prohibits discrimination in the provision of housing services on the basis of "handicap" (hereinafter "disability").

13.     Under the FHA, the term disability means, with respect to a person, a "physical or mental impairment which substantially limits one or more of such person's major life activities, a record of such an impairment, or being regarded as having such an impairment." 42 U.S.C. § 3602(h); 24 C.F.R. § 100.201.

14.     Physical or mental impairment under the FHA includes "[a]ny physiological disorder or condition, . . . affecting one or more of the following body systems: … respiratory, … hemic." 24 C.F.R. § 100.201.

15.     Major life activities include "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 24 C.F.R. § 100.201.

16.     The FHA prohibits conduct that would "make unavailable or deny, a dwelling to any buyer or renter because of a handicap" of that person or persons residing in or intending to reside in that dwelling. 42 U.S.C. § 3604(f)(1).

17.     The FHA provides that it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling because of the disability of that person or persons residing in or intending to reside in that dwelling after it is sold, rented, or made available. 42 U.S.C. §§ 3604(f)(1) & (2).

18.     It is a violation of 42 U.S.C. § 3604(f)(2) for a housing provider to "refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B).

19.     The FHA prohibits housing providers from "coerc[ing], intimidat[ing], threaten[ing], or interfer[ing] with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed … any right granted or protected by" the FHA. 42 U.S.C. § 3617.

20.     Conn. Gen. Stat. § 46a-64c *et seq.* contains prohibitions on discrimination on the basis of disability and retaliation that are substantially equivalent to those contained in the federal Fair Housing Act. Conn. Gen. Stat. § 46a-64c(a)(3), (6), (9).

21.     The Project-Based Section 8 Housing Program is a federally funded program intended to assist low-income families in obtaining decent, safe, sanitary, and affordable housing.

22.     The Project-Based Section 8 Housing Program may be administered by state, regional, or local housing agencies known as Public Housing Agencies ("PHAs"). PHAs execute a Housing Assistance Payments ("HAP") contract with HUD under which they agree to administer the program in accordance with HUD regulations and requirements.

23.     PHAs and other federally subsidized providers may only terminate a tenant's housing subsidy in limited circumstances authorized by HUD. These are limited to the following:

> (A) A tenant fails to provide required information *at the time of recertification*, including changes in family composition, or changes in income or social security numbers for new *household* members; (B) A tenant fails to sign/submit required consent and verification forms …; (C) An annual or interim recertification determines that the tenant has an increased ability to pay the full contract rent; (D) A tenant fails to move to a different-sized unit within 30 days …; (E) A tenant has begun receiving assistance, but the owner is unable to establish citizenship or eligible immigration status … and (F) A student enrolled at an institution of higher education does not meet the eligibility requirements for assistance.

HUD Handbook 4350.3: Occupancy Requirements of Subsidized Multifamily Housing Programs at § 8-5 (italics added) (hereinafter "HUD Handbook").

24.     HUD prohibits PHAs and other federally subsidized providers from terminating federal subsidies based on any other factors. Id.

25.     A PHA terminating a tenant's housing subsidy must provide due process and comply with HUD regulations and federal law concerning subsidy termination. 42 U.S.C. § 1437d(k) entitles tenants subject to subsidy termination proceedings to: "(1) be advised of the specific grounds of any proposed adverse public housing agency action; (2) have an opportunity for a hearing before an impartial party upon timely request . . .; (3) have an opportunity to examine any documents or records or regulations related to the proposed action; (4) be entitled to be represented by another person of their choice at any hearing; (5) be entitled to ask questions of witnesses and have others make statements on their behalf; and (6) be entitled to receive a written decision by the public housing agency on the proposed action." 42 U.S.C. § 1983 provides that "every person who, under color of any statute of any State . . . subjects or causes to be subjected any citizen of the United States other person within the jurisdiction thereof . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . ."

26.     A PHA or other federally subsidized housing provider may terminate a subsidized tenant's *tenancy*, as compared to their *subsidy*, in limited instances through an eviction action, due to: (1) Substantial lease violations, (2) Fraud, (3) Repeated minor violations, (4) Nonpayment of rent, (5) Failure to disclose and provide verification of SSN(s), (6) Failure to sign and submit consent forms, (7) Drug abuse and other criminal activity, (8) Material failure to carry out obligations under a State Landlord and Tenant Act, and (9) Other good cause. HUD Handbook, § 8-21, at p. 8-11.

## IV.        FACTS

## BACKGROUND

27.     Plaintiff Tyjon Bolton resides in East Hartford, Connecticut, in a unit within the Veterans Terrace complex.

28.     Mr. Bolton has been a tenant at Veterans Terrace since about 2006.

29.     Until April 30, 2023, Mr. Bolton's unit was subsidized under the federal Project-Based Section 8 program.

30.     Under Project-Based Section 8 program rules, tenants typically pay 30 percent of their household income in rent. The program administrator, typically a PHA, calculates the household's rent amount annually based on the household income during an annual recertification process. If a household experiences a change in income during the term of the lease, the PHA must perform an interim rent adjustment upon the tenant's request, within a reasonable time, which generally should not exceed four weeks.

31.     Mr. Bolton initially resided at a unit in Veterans Terrace located at 43 Columbus Circle with his mother and his sister with his mother as head of household.

32.     Mr. Bolton became head of household in or about 2015 after his mother vacated, and he and his sister continued to reside at 43 Columbus Circle until about October 2020 when they were transferred to their current unit.

33.     Mr. Bolton has sickle cell disease, a lifelong genetic blood disorder that causes acute and chronic pain, infections, and causes him to be immunocompromised. Due to his condition, Mr. Bolton is substantially limited in activities of daily living

including bathing, eating, dressing, cleaning, and ability to work, and, when experiencing pain, he needs assistance driving.

34.     Sickle cell disease is a genetic blood disorder affecting the hemic system and constitutes a disability under the FHA.

35.     Due to sickle cell disease and a related lung disease, asthma, Mr. Bolton is also substantially limited in the major life activity of breathing.

36.     Asthma is a disease affecting the pulmonary and respiratory systems and constitutes a disability under the FHA.

37.     Mr. Bolton receives social security benefits due to his disabilities.

38.     At all times relevant, Defendant was aware that Mr. Bolton is an individual with disabilities.

39.     In or around July 2020, Mr. Bolton made a reasonable accommodation request to Defendant supported by his medical providers asking that his mother be permitted to reside with him as his live-in aide to assist him with activities of daily living.

40.     Defendant approved this request in or around September 2020, and transferred Mr. Bolton, his sister, and his mother as his live-in aide to their current three-bedroom unit.

41.     Upon information and belief, Defendant entered into an agreement with Carabetta Management Company under which residents at Veterans Terrace were to transfer to newly constructed units managed by Carabetta ("the Veterans Terrace redevelopment").

42.     Upon information and belief, the new construction phases in the Veterans Terrace redevelopment have fewer two- and three-bedroom units, and/or fewer units

8

designated for households below 50 percent Area Median Income than the original

Veterans Terrace complex, producing a structural shortage of units appropriate for

historic Veterans Terrace residents.

43.    Units at the original Veterans Terrace, including Mr. Bolton's, have well

known poor conditions including cockroach and rodent infestations.

44.    Mr. Bolton was told his household was in Phase I of the transfer process

and would be among the first households to move to the Veterans Terrace

redevelopment.

45.    At Defendant's direction, Mr. Bolton's household submitted applications for

a three-bedroom unit at the Veterans Terrace redevelopment in or around April 2021

and January 2022. The application called for a list of all household members, and Mr.

Bolton's household's application listed Mr. Bolton as head of household, his sister as

co-head of household, and his mother, who Defendant knew to be his his live-in aide.

46.    In January 2022, Mr. Bolton met with Carabetta concerning his transfer to

the Veterans Terrace redevelopment and was told that the transfer would occur in the

near future.

**DEFENDANT QUESTIONS MR. BOLTON'S DISABILITY AND REVOKES ITS APPROVAL FOR A LIVE-IN AIDE**

47.    In or around March 2022, Defendant demanded Mr. Bolton "update" his

reasonable accommodation request for a live-in aide by providing additional medical

documentation.

48.    On or around April 12, 2022, one of Mr. Bolton's providers at the New

England Sickle Cell Institute at UConn Health verified his need for a live-in aide to assist

him with activities of daily living including showering/bathing, eating, dressing, and

cleaning, as well as driving to appointments when experiencing pain, and Mr. Bolton delivered this documentation to Defendant's office.

49.     Defendant subsequently revoked its permission for Mr. Bolton to have a live-in aide. In a letter dated May 10, 2022, Defendant's Director of Compliance, Ms. Naughton, denied his request on two grounds: (1) his provider did not verify his need for accommodation and (2) Defendant believed his request did not have a verifiable nexus to his disability. Defendant demanded his live-in aide leave his household and stated that he would be downsized to a two-bedroom unit.

50.     Defendant's claim that Mr. Bolton's provider did not verify his need for an accommodation is false.

51.     Also by letter dated May 10, 2022, Defendant stated it intended to terminate Ms. Bolton's subsidy on July 1, 2022, for purported violation of "family obligations" related to alleged failure to report income.

52.     Upon information and belief, Defendant used these claims to deny Mr. Bolton a transfer to the Veterans Terrace redevelopment.

53.     On or around July 21, 2022, Mr. Bolton attended a meeting at Defendant's office to do his annual recertification with his assigned worker.

54.      Ms. Naughton interrupted the meeting and informed Mr. Bolton that, based on her purported "background in biology," she did not consider him disabled because she had seen him walking, driving, and smiling, and that she did not believe he needed a live-in aide.

55.     Due to Ms. Naughton's interruption, the recertification was not completed.

56.     Mr. Bolton retained counsel who, on August 11, 2022, demanded Defendant grant his reasonable accommodation request for a live-in aide, refrain from interfering with his live-in aide, and timely process his transfer to the Veterans Terrace redevelopment. Mr. Bolton's counsel provided another copy of the April 12, 2022, documentation from Mr. Bolton's provider at the New England Sickle Cell Institute in support of his reasonable accommodation request.

57.     On August 22, 2022, Defendant denied the request, falsely claiming that Mr. Bolton told Defendant's staff, including Ms. Naughton, in April 2022 that he did not need a live-in aide.

58.     On August 30, 2022, Mr. Bolton, through counsel, reiterated his demand that Defendant grant his reasonable accommodation request for a live-in aide.

59.     On September 9, 2022, Defendant's counsel asked that Mr. Bolton provide additional medical verification in support of his request for a live-in aide.

60.      In turn, Mr. Bolton's counsel requested Defendant provide documentation and an updated ledger supporting Defendant's allegation of unreported income.

61.     On September 15, 2022, Mr. Bolton provided additional medical documentation requested by Defendant.

62.     On September 26, 2022, Defendant informed Mr. Bolton it had granted permission for him to have his mother as a live-in aide.

63.     Upon information and belief, Defendant never placed Mr. Bolton's household back in the queue for a transfer to the Veterans Terrace redevelopment.

**DEFENDANT REFUSES TO ACKNOWLEDGE MR. BOLTON'S ATTEMPTS TO REPORT A CHANGE IN INCOME AND WITHHOLDS DOCUMENTS**

64.     Shortly thereafter, on October 16, 2022, Defendant, through counsel, claimed that Mr. Bolton's household owed $3,923 in rent based on an alleged underreporting of income from years past.

65.     Through counsel, Defendant averred this was sufficient to "result in termination" but that Defendant would work with Mr. Bolton to try to bring his household into good standing.

66.     On October 25, 2022, in order to verify Defendant's claims and calculations concerning alleged unreported income, Mr. Bolton's counsel requested a copy of Mr. Bolton's file, which would contain a rent ledger showing amounts paid and purportedly owed as well as documentation of his household income and recertifications.

67.     Also on October 25, 2022, Mr. Bolton's counsel informed Defendant's counsel that Mr. Bolton needed to report a new change in income and that he had previously contacted Defendant regarding the change but had not received a response. Mr. Bolton's counsel requested that Defendant contact Mr. Bolton directly or through counsel regarding the income change.

68.     Defendant's counsel did not respond during the following two months, and Defendant did not contact Mr. Bolton concerning the income change as requested.

69.     On December 7 and 23, 2022, Mr. Bolton's counsel requested, for the second and third time, that Defendant contact Mr. Bolton concerning the income change, and to reiterate Mr. Bolton's request that Defendant provide a copy of Mr. Bolton's file.

70.     During a January 11, 2023, phone call, Mr. Bolton's counsel asked Defendant's counsel for a complete copy of Mr. Bolton's file, and asked that, given Defendant's delays in providing the file, Defendant transfer Mr. Bolton to a unit at the Veterans Terrace redevelopment as soon as one became available. Counsel further requested that Mr. Bolton be permitted to pay off any alleged rent balance if the documentation verified Defendant's claims concerning his rent payments.

71.     On January 12, 2023, Defendant's counsel invited Mr. Bolton to view the file at Defendant's office. Counsel explained that Defendant was drafting a timeline to share with Mr. Bolton to develop a "shared set of facts" concerning Mr. Bolton's allegedly unreported income after which time the parties could discuss Mr. Bolton's request for a payment plan for any underpayment of rent.

72.     Defendant's counsel never provided Plaintiff's counsel with this timeline or a proposed payment plan.

73.      On January 18, 2023, Mr. Bolton's counsel reviewed Mr. Bolton's file at Defendant's office, and due to the volume of the file, on January 19 and 30, 2023, requested Defendant's counsel send an electronic copy of the file.

74.     On January 30, 2023, Defendant's counsel sent piecemeal documentation to Mr. Bolton's counsel rather than the entire paper file kept at Defendant's office. The documents did not include a rent ledger showing amounts paid and purportedly owed.

75.     On February 27, 2023, Mr. Bolton's counsel informed Defendant's counsel that the copy of the file was incomplete and requested Defendant provide the complete file. Mr. Bolton's counsel reiterated for the fourth time that Mr. Bolton was attempting to

report a change in income and requested that Defendant provide any necessary forms, as Defendant had not contacted Mr. Bolton as repeatedly requested.

76.     Having received no reply, on April 28, 2023, Mr. Bolton's counsel asked Defendant's counsel to either mail a paper copy of the complete file or allow Mr. Bolton's counsel to borrow and copy the file. On May 1, 2023, Defendant's counsel stated that she would talk to Defendant and report back.

### DEFENDANT TERMINATES MR. BOLTON'S SUBSIDY WITHOUT DUE PROCESS

77.      Mr. Bolton repeatedly attempted to report a change in income in 2022 and 2023 and remained in active communication with Defendant though counsel regarding Defendant's allegations concerning his household income.

78.     Defendant was aware Mr. Bolton was willing to enter into a repayment agreement and that he desired to transfer to the Veterans Terrace redevelopment as soon as a unit became available.

79.     Despite Mr. Bolton's ongoing efforts to communicate with Defendant about his change in income, Defendant, in a document dated March 15, 2023, stated that it intended to terminate his subsidy effective April 30, 2023, and raise his rent to market rent, claiming that he "failed to comply with [] 'Family Obligations'" in accordance with "*24 C.F.R. 5.609:* FAILURE TO REPORT INCOME IN A TIMELY FASHION" and "*4350.3 REV I:* OCCUPANCY REQUIREMENTS OF SUBSIDIZED HOUSING PROGRAMS - *UNAUTHORIZED LIVE-IN [sic] WITHOUT AUTHORIZATION/CONSENT BY THE HOUSING AUTHORITY*".

80.     Defendant's notice contained a boilerplate statement "Supply any information that the PHA or HUD determines to be necessary including evidence of

citizenship or eligible immigration status, and information for use in regularly scheduled re-examination of family and income composition."

81.    Defendant's termination notice cited 24 C.F.R. 982.552(b), which applies only to the federal Housing Choice Voucher Program.

82.    Defendant's termination notice required Mr. Bolton to request a hearing within 10 business days, by March 28, 2023.

83.    Federal regulations require property owner or PHA to deliver notice of subsidy and tenancy terminations in two ways: (1) by U.S. mail and (2) by hand-delivery to the unit in which the PHA representative hands the notice to an adult occupant, and if no occupant is available, to place the notice under the door or affix the notice to the door. 24 C.F.R. § 247.7.

84.    Defendant failed to provide the letter to Mr. Bolton as required by federal regulations because it did not hand-deliver a copy to his unit.

85.    Mr. Bolton did not receive the notice from Defendant by mail in a timely fashion and was unable to request an informal hearing by Defendant's deadline of March 28, 2023.

86.    Defendant's notice lacked sufficient detail to advise Mr. Bolton of the specific allegations against him and for Mr. Bolton to prepare a defense.

87.    Defendant's notice was inadequate in that it did not notify Mr. Bolton, as required by HUD, that if he failed to pay the increased rent, Defendant might terminate his tenancy and seek to enforce the termination in court.

88.    Defendant's notice was inadequate in that it did not cite the regulations that governed the proposed subsidy termination.

89.     Neither Defendant nor its counsel notified Mr. Bolton's counsel of its intent to terminate Mr. Bolton's subsidy despite the active communications occurring between counsel regarding alleged unreported income and a new change in income during that same time period.

90.     Defendant's failure to provide adequate notice to Mr. Bolton and failure to provide any notice to Mr. Bolton's counsel, who it knew was representing him in connection with his alleged unreported income and his reasonable accommodation request for a live-in aide, effectively deprived him of the right to have counsel represent him at an informal hearing.

91.     Defendant terminated Mr. Bolton's subsidy effective April 30, 2023, and began charging Mr. Bolton's household market rent of $1,339 per month.

92.     Upon information and belief, the decision to terminate Mr. Bolton's subsidy was made by Ms. Naughton.

93.     Defendant failed to provide a written decision to Mr. Bolton setting forth the reasons for the subsidy termination and the evidence relied on in support of the termination as required by federal law and regulations.

94.     Defendant's termination of Mr. Bolton's subsidy violated Mr. Bolton's right to due process in the following ways: (1) the notice of proposed termination of his federal subsidy was legally insufficient in that it was not delivered in accordance with program rules as set forth in 24 C.F.R. § 247.7, was not delivered in a timely manner, and lacked details regarding the allegations against Mr. Bolton; (2) the stated reasons for the subsidy termination are not permitted by HUD as a basis to terminate a federal housing subsidy and do not include the regulations Defendant relied upon in making the

16

decision to terminate his subsidy; (3) by withholding Mr. Bolton's complete file, Defendant deprived Mr. Bolton the right to view the documents and evidence Defendant relied upon to terminate his subsidy; (4) by failing to deliver the notice of termination in accordance with program rules and failing to provide a copy of the notice to Mr. Bolton's counsel, Defendant effectively deprived Mr. Bolton of the right to request an informal hearing and have counsel represent him at such hearing; and (5) Defendant did not issue a written decision stating the basis for the termination decision and evidence relied upon to make that decision.

95.    Defendant's reasons to terminate Mr. Bolton's subsidy were improper under HUD rules and regulations.

96.    Defendant's stated reasons for termination of Plaintiff's subsidy appear to apply to termination of subsidized tenants' tenancies rather than tenants' federal subsidies.

97.    An allegation that a tenant has an unauthorized live-in aide or occupant is not a permitted basis to terminate a federal subsidy or the tenancy of a federally subsidized tenant. See HUD Handbook, § 8-5; § 8-13 at pp. 8-12, 8-13.

98.    Allegations of unreported or underreported income are not a permitted basis for a PHA or owner to terminate a tenant's federal housing subsidy or tenancy. See HUD Handbook, § 8-5; § 8-13 at p. 8-13.

99.    Where a PHA or other federally subsidized owner determines that a tenant has unreported or underreported income, the remedy is a repayment agreement rather than termination of the tenant's housing subsidy. HUD requires:

> [t]he [owner] *must* go back to the time the unreported or underreporting of
> income started … and calculate the difference between the amount of rent

17

the tenant should have paid and the amount of rent the tenant was charged. The [owner] must notify the tenant of any amount due and their obligation to reimburse the [owner]. A record of this calculation must be provided to the tenant and also retained in the tenant's file.[1]

100.   HUD requires the owner to allow the tenant to repay the amounts due in a mutually agreeable repayment agreement.[2]

101.   Defendant never offered Plaintiff a repayment agreement.

102.   Upon information and belief, at all times relevant, Defendant, through its Board of Commissioners and/or its Executive Director, delegated responsibility for compliance with due process and state and federal laws and regulations during the subsidy termination process to Ms. Naughton.

103.   Upon information and belief, in her official role as Director of Compliance, Ms. Naughton oversees all of Defendant's subsidy terminations and is the final decisionmaker with respect to subsidy terminations for individual tenants.

104.   Upon information and belief, in a 2022 or 2023 HUD compliance review, HUD informed Defendant that its practices for documenting subsidy terminations were inadequate in that Defendant did not meet federal requirements including due process requirements.

105.   During the time period when Mr. Bolton's subsidy was terminated, Defendant in effect delegated final policymaking authority to Ms. Naughton with respect to subsidy terminations for individual tenants.

---

[1] HUD NOTICE: H 2013-06, SUBJECT: Enterprise Income Verification (EIV) System, at 41 (Mar. 1, 2013); see also HUD Handbook, § 8-25(E)(2).
[2] HUD NOTICE, at 41-42.

106.    Upon information and belief, during this time period, Defendant had a pattern and practice of depriving subsidy holders of due process in connection with the termination of their subsidies.

107.    Upon information and belief, Ms. Naughton created Defendant's policy for compliance with due process requirements for subsidy terminations.

108.    Upon information and belief, Ms. Naughton has the authority to exercise discretion in determining whether and when to terminate individual tenant subsidies without oversight or review by the Executive Director and/or Board of Commissioners or any other party who is independent of the decision under review.

109.    On May 30, 2023, Mr. Bolton's counsel contacted Defendant's counsel regarding the subsidy termination, informing Defendant's counsel that Defendant was engaging in retaliation against Mr. Bolton in violation of the Fair Housing Act and Section 504 of the Rehabilitation Act. Mr. Bolton's counsel demanded Defendant reinstate Mr. Bolton's subsidy, credit him for any overpayment due to having been charged market rent, recalculate Mr. Bolton's rent based on his current household income, provide a complete copy of his file to Mr. Bolton's counsel, allow Mr. Bolton to enter into a repayment plan if necessary, and offer Mr. Bolton a transfer to the next available unit in the Veterans Terrace redevelopment.

110.    Mr. Bolton's counsel also informed Defendant's counsel that his unit was infested with cockroaches.

111.    Upon information and belief, Defendant at that time was already aware that the complex was infested with cockroaches and rodents and that any prior pest control measures had not been effective.

19

112. Mr. Bolton's counsel requested a written response by June 6, 2023.

113. On June 13 and 15, 2023, Defendant's counsel claimed Defendant was working on a written response. Despite this, Defendant's counsel never substantively responded to Plaintiff's counsel.

114. On or around June 15, 2023, Defendant sent a paper copy of Mr. Bolton's file to Mr. Bolton's counsel's office.

115. The file was incomplete in that it lacked a current rent ledger.

116. On June 30 and July 26, 2023, Mr. Bolton's counsel asked Defendant's counsel for an updated copy of Mr. Bolton's rent ledger, which was not included in Mr. Bolton's file.

117. Defendant's counsel finally provided a copy of the rent ledger on August 10, 2023, which showed that rather than owing rent, Mr. Bolton had a positive rent credit.

## DEFENDANT REFUSES TO REINSTATE MR. BOLTON'S SUBSIDY, ACCUSES HIM OF FRAUD, AND DENIES HIS REASONABLE ACCOMMODATION REQUEST FOR A TRANSFER

118. On October 4, 2023, Mr. Bolton's counsel informed Defendant's counsel that Mr. Bolton appeared to have a credit and proposed that Defendant reinstate Mr. Bolton's subsidy, apply the credit to his next rental payment, and complete a recertification to determine the updated rent amount for his household based on their current income.

119. Mr. Bolton's counsel denied Defendant's allegation that Mr. Bolton had an unauthorized live-in aide.

120.   Mr. Bolton's counsel also requested that Defendant prioritize Mr. Bolton's transfer as a reasonable accommodation of his disability due to the poor conditions in his unit, including rodent and cockroach infestations, aggravating his asthma.

121.   On October 27, 2023, Mr. Bolton's counsel followed up with Defendant's counsel and asked for a response by November 3, 2023.

122.   On November 7, 2023, Defendant's counsel responded that Defendant refused to reinstate Mr. Bolton's subsidy, claiming for the first time that the "unauthorized live-in" was his brother and that Mr. Bolton had allegedly failed to report income on a second occasion.

123.   Defendant's counsel claimed that it was "too late" to reinstate Mr. Bolton's subsidy, and baselessly accused Mr. Bolton of "attempting to defraud the program."

124.   When denying his RA request to transfer to a new unit, Defendant relied in part on the baseless and unfounded fraud allegations.

125.   HUD defines "fraud" as "when a tenant *knowingly* provides inaccurate or incomplete information"[3] and cautions federally subsidized housing providers that "[f]raud should not be confused with tenant errors, …. [which] are usually infractions or oversights that do not involve intentional deceit."

126.   Mr. Bolton did not commit fraud. Through counsel, Mr. Bolton repeatedly notified Defendant's counsel of a change in income in 2022 and 2023 and asked Defendant's counsel to have Defendant contact him regarding the same. Defendant refused to do so, and instead terminated his subsidy for purportedly failing to report income.

---

[3] HUD Handbook, § 8-13, p. 8-12, 8-13 (emphasis added).

127.    Defendant's accusation of fraud constitutes a violation of Mr. Bolton's right to due process in connection with the subsidy termination in that Defendant did not give Mr. Bolton formal notice of its allegations of fraud and an opportunity to respond to those allegations, and Defendant relied on its accusation of fraud in order to deprive him of the opportunity to reinstate his subsidy.

128.    Upon information and belief, Ms. Naughton made the decision to refuse to review or reconsider the termination of Mr. Bolton's subsidy.

129.    Ms. Naughton's decision to terminate Mr. Bolton's subsidy was the final decision regarding the termination and represented the policy of Defendant with respect to the termination of Mr. Nolton's subsidy in these particular circumstances.

130.    Defendant claimed it would "engage in the interactive process" with Mr. Bolton concerning the poor conditions in his unit if he provided a note from his medical provider. Defendant refused to transfer Mr. Bolton to a different unit.

131.    On November 20, 2023, Mr. Bolton's counsel provided Defendant's counsel with additional medical documentation from Mr. Bolton's provider supporting his request for a transfer to a different unit along with photos of rodents found in his unit within the prior week.

132.    Defendant did not respond.

133.    Mr. Bolton remains living in a substandard apartment against the advice of his medical providers while other tenants have been transferred to the Veterans Terrace redevelopment.

134.    Defendant is required by federal Housing Quality Standards and local housing and health code requirements to provide safe and decent housing.

135.    Pest infestations violate federal Housing Quality Standards and local housing and health code requirements.

136.    Defendant has not identified any undue financial or administrative burden or fundamental alteration that could justify its refusal to grant Mr. Bolton's reasonable accommodation request for a transfer due to poor conditions aggravating his disability.

137.    Granting Mr. Bolton's reasonable accommodation request would not impose an undue financial or administrative burden on Defendant.

138.    Granting Mr. Bolton's request for a transfer would not constitute a fundamental alteration of the nature of Defendant's services.

139.    Defendant's refusal to transfer Mr. Bolton to a different unit constitutes a denial of his reasonable accommodation request.

140.    Defendant's actions, including but not limited to baselessly withdrawing approval for his live-in aide, delaying and otherwise interfering with his transfer to the Veterans Terrace redevelopment, refusing to respond to Mr. Bolton's attempts to report income in 2022 and 2023, providing incomplete copies of the documents in Mr. Bolton's file, and terminating his subsidy based on alleged unreported income and an alleged "unauthorized live-in" without due process, constitute interference with Mr. Bolton's exercise of his fair housing rights.

141.    Defendant has acted and continues to act with malice, willful, and/or reckless disregard for Mr. Bolton's civil rights.

142.    As a result of Defendant's conduct, Mr. Bolton has suffered emotional distress including anxiety, anger, depression, and mental anguish, including fear that he will lose his housing; physical pain and suffering associated with aggravation of his

breathing impairment and risk of infection due to the substandard conditions in his unit; financial loss in connection with the loss of his federal housing subsidy; and the loss of a valuable subsidized housing opportunity in a newly constructed unit.

## V.    CLAIMS

### COUNT I

**Violation of the Fair Housing Act
42 U.S.C. §§ 3601 *et seq.***

143.    Plaintiff incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

144.    Defendant's practices, procedures, and actions as described above have violated and continue to violate the rights of Plaintiff as guaranteed by the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 *et seq.* by:

a.    denying or otherwise making housing unavailable on the basis of disability in violation of 42 U.S.C. § 3604(f)(1);

b.    discriminating on the basis of disability status in the terms, conditions, or privileges of the rental of a dwelling in violation of 42 U.S.C. § 3604(f)(2) including refusing to make a reasonable accommodation as required by 42 U.S.C. § 3604(f)(3)(B); and

c.    coercing, intimidating, threatening, and interfering with Plaintiff's exercise of his fair housing rights in violation of 42 U.S.C. § 3617.

### COUNT II

**Violation of Conn. Gen. Stat. §§ 46a-64c *et seq.***

145.    Plaintiff incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

146.    Defendant's practices, procedures, and actions as described above have violated and continue to violate the rights of Plaintiff as guaranteed by Conn. Gen. Stat. § 46a-64c *et seq.* by:

a.    denying or otherwise making housing unavailable on the basis of disability in violation of Conn. Gen. Stat. § 46a-64c(a)(1);

b.    discriminating on the basis of disability status in the terms, conditions, or privileges of the rental of a dwelling in violation of Conn. Gen. Stat. § 46a-64c(a)(6)(B) including by refusing to make a reasonable accommodation as required by Conn. Gen. Stat. § 46a-64c(a)(6)(C)(ii); and

c.    coercing, intimidating, threatening, and interfering with Plaintiff's exercise of his fair housing rights in violation of Conn. Gen. Stat. § 46a-64c(a)(9).

## COUNT III

### Violation of Section 504 of the Rehabilitation Act
### 29 U.S.C. §§ 794 *et seq.*

147.    Plaintiff incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

148.    Defendant is a recipient of federal financial assistance.

149.    As a recipient of federal financial assistance, the Defendant is obligated to comply with Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* and its implementing regulations, which prohibit discrimination on the basis of disability by entities receiving federal financial assistance.

150.    Defendant's actions as described herein, including its denial of Plaintiff's reasonable accommodation requests and its interference with Plaintiff's exercise of his fair housing rights, violate Section 504 of the Rehabilitation Act.

151.    As a result of Defendant's discriminatory actions, Plaintiff has and will continue to suffer losses, thus Defendant must be required to pay compensatory damages and attorney's fees and costs.

## COUNT IV

### Violation of Due Process
### 42 U.S.C. §§ 1983

152.    Plaintiff incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

153.    Plaintiff's federally subsidized housing is a protected property interest.

154.    Defendant violated Plaintiff's right to due process in the termination of his subsidy, all under color of law, without following proper procedures, including but not limited to depriving him adequate notice of the allegations against him and of his right to a hearing, improper service of the notice, failing to provide Mr. Bolton an opportunity to examine documents, records, and regulations related to the proposed subsidy termination, failing to provide Mr. Bolton the opportunity to be represented by counsel during the subsidy termination process, failing to have a decision regarding the subsidy termination made by an impartial decisionmaker, and failing to provide a written decision explaining the reasons and evidence relied upon to terminate the subsidy.

155.    Defendant further violated Plaintiff's right to due process in the termination of his subsidy, all under color of law, by relying upon improper grounds to justify the termination of his subsidy and its refusal to consider reinstatement of his subsidy.

156.    Defendant further violated Plaintiff's right to due process in the termination of his subsidy, all under color of law, by depriving Mr. Bolton of his federal subsidy

based upon reasons without legal authority, and therefore reasons that were arbitrary and capricious in violation of his right to due process under the law.

157.    Defendant's actions violate the Due Process Clause of the 14th Amendment to the United States Constitution and program requirements established by 42 U.S.C. § 1437d, as actionable under 42 U.S.C. § 1983.

## RELIEF

Wherefore, Plaintiff requests that the Court:

a.   Enter a declaratory judgment finding that the actions of Defendant alleged in the Complaint violate 42 U.S.C. §§ 3601 *et seq.* and Conn. Gen. Stat. §§ 46a-64c *et seq.*; Section 504 of the Rehabilitation Act; and 42 U.S.C. § 1983;

b.   Enter a permanent injunction barring Defendant from continuing to engage in the illegal discriminatory conduct alleged in this Complaint;

c.   Enter a permanent injunction requiring Defendant to allow Plaintiff to have a live-in aide as long as he resides in a property owned or managed by Defendant;

d.   Enter a permanent injunction requiring Defendant to comply with all federal Housing Quality Standards, local housing and health codes and requiring Defendant to transfer Plaintiff and his household to a new unit that so complies and meets Plaintiff's disability-related need for safe, habitable housing;

e.   Enter a permanent injunction requiring Defendant to reinstate Plaintiff's subsidy;

f.   Enter a permanent injunction requiring Defendant to comply with all federal laws and regulations relating to due process in connection with proposed terminations of any federal subsidies;

g.   Enter a permanent injunction prohibiting Defendant from retaliating against Plaintiff and requiring Defendant to take all affirmative steps necessary to remedy the effects of the illegal discriminatory conduct alleged in this Complaint and to prevent repeated occurrences in the future;

h.   Award compensatory damages in an amount that would fully compensate Plaintiff for the emotional distress and physical pain and suffering caused by Defendant's violations of the law alleged in the Complaint pursuant to 42 U.S.C. § 3613(c), Conn. Gen. Stat. § 46a-98a, 29 U.S.C. § 794a, 42 U.S.C. § 1981 *et seq.*, and any other applicable laws;

i.   Award punitive damages in an amount that would punish Defendant for the willful, wanton, and reckless misconduct alleged in this Complaint and that would effectively deter it from future discriminatory behavior pursuant to 42 U.S.C. § 3613(c) and Conn. Gen. Stat. § 46a-98a, and any other applicable laws;

j.   Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 3613(c), Conn. Gen. Stat. § 46a-104, 29 U.S. Code § 794a, 42 U.S.C. § 1988(b), and any other applicable laws; and

k.   Order all other relief deemed just and equitable by the Court.

Respectfully Submitted,

Plaintiff,
TYJON BOLTON

By Counsel: <u>/s/ Jessica Labrencis</u>
Jessica Labrencis (ct29741)
Greg Kirschner (ct26888)
Connecticut Fair Housing Center
60 Popieluszko Court
Hartford, CT 06106
(860) 247-4400 (Tel.)
(860) 247-4236 (Fax)
jlabrencis@ctfairhousing.org
gkirschner@ctfairhousing.org